COMPAGNIE DES SUCRERIES DE PUERTO RICO

*v.*

THE PONCE & GUAYAMA RAILROAD COMPANY.

San Juan, Equity, No. 414.

1. A lessee in the open and visible possession of real estate is a necessary party to an action for the forcible expropriation of any portion of the premises covered by such lease.

2. In such case it is not necessary that the lease should have been registered in order to protect the rights of such a lessee.

3. Before proceeding to take possession of the lands for the right of way for a railway through property which is held under lease, it is necessary that compensation should be made to the lessee on account of the damages which will result from the taking of such lands. or that a proper action for the expropriation of such lands should be brought in a court of competent jurisdiction, to which action the lessee should be made a party.

4. In an action brought by a lessee of lands which are threatened to be taken by means of forcible expropriation proceedings, instituted against the owner of the lands and to which the lessee has not been made a party, it is proper for the court to issue a restraining order to prevent the taking of possession of such lands from such lessee until compensation has been made for the damages to be caused to such lessee by reason of such taking, or until an action shall be instituted in the proper court by the party claiming such right of expropriation, and to which action such lessee shall be a party.

Opinion filed September 20, 1906.

*Messrs. Hartzell & Rodriguez,* solicitors for plaintiff.

*F. H. Dexter, Esq.,* solicitor for defendant.

RODEY, Judge, delivered the following opinion:

On September 11, 1906, the above-named complainant appeared before the court with its bill petitioning for a temporary injunction against the defendant. The court examined the bill and heard the statements of counsel, but could not see sufficient urgency for the immediate granting of the injunction prayed for. It therefore ordered defendant to be cited to show cause Monday, the 17th of September, why the injunction should not issue. Counsel known to represent the defendant was in town at the time, and he accepted service and appeared on the day set, in opposition to counsel for complainant, and made the showing for defendant, orally and by introducing divers papers and records. After the hearing, the court permitted complainant to interline a clause in the complaint, showing, as had practically been admitted on the hearing, that the damage threatened would amount to more than $1,000.

The facts involved in the case do not, in the opinion of the court, make it urgent, nor is there danger of great wrong to either of the parties, therefore the case does not call for actively stringent measures at once. There is a principle involved, though, that ought to receive the attention of the court, and it may be as well in this case, as modestly as it may, for the court briefly to express its views and take such action as may call attention of counsel and parties to the matter. The facts in the case may be stated as follows:

The complainant is a foreign corporation growing cane and manufacturing sugar in the southern part of the island of Porto Rico, and, to that end, has large plantations, as well as a

II. PORTO RICO.—12.

"Central" or sugar factory or plant. The defendant is a New Jersey corporation engaged in the construction of a railroad from Ponce east to Guayama, and perhaps beyond, on the south shore of the island. Both corporations have qualified to do business in Porto Rico. It appears that the complainant, among other lands, is occupying and cultivating a cane plantation of some 900 acres, known as "Hacienda Amelia," belonging to one Palmieri, under a contract or lease with the owner, which has some ten years yet to run, but which contract or lease has never been recorded in the local registry office.

The defendant, it is admitted, through proper action of the executive council of Porto Rico, is vested, for its railroad purposes, with the power of eminent domain. It requires about 5 acres for its right of way through this 900 acre tract. To that end, it surveyed the same, and, although it had full knowledge of the occupancy of the same by the complainant, it ignored its rights, and proceeded to condemn the land under the act of the local legislature of March 12, 1903 (p. 50, Session Laws P. R.); had the same appraised at one thousand and eight dollars ($1,008) and paid the owner the money, took a judgment condemning the land, and claims to have been put in possession by the court, which is denied; and thereafter bought the tract condemned of the owner. It also attempted to show that complainant had full knowledge of all these proceedings in the premises, and that it first helped the owner of the land to resist defendant's efforts to condemn the same, and then sat by without interpleading or doing anything to protect its rights until the defendant threatened to proceed to cut the cane and clear the land along the strip through the plantation in question, thus claimed to have been secured for its right of way.

It is admitted by defendant that it paid no attention whatever to the complainant all through the condemnation pro-

Compagnie des Sucreries v. Ponce & G. R. Co.

ceedings, and did not make it a party to the same, in the premises, and insists and contends that it is not obliged by law so to do, but confesses that perhaps it owes and ought to pay defendant for the crop of cane now standing upon the strip of land which it intends to use.

Considerable feeling has apparently arisen between the parties, which, was, to some extent, exhibited at the hearing. Complainant vehemently insists that it is under no obligation to the defendant, and that it is bound to take no affirmative action against it, and that the burden is upon the defendant to come rightfully upon the land in question and dispossess complainant, or not come at all. That its property cannot be taken without due process of law, and that if it is taken, the complainant must first be paid or secured the ascertained value of that which is taken; and that, as complainant was in possession, the defendant was put upon inquiry as to its rights.

The defendant insists that the Constitution of the United States is not, to any extent, either as to the Bill of Rights or any other portion thereof, in force in Porto Rico, and that, under the local law as left in force by Congress, what is known as a lease to American law, if for less than six years, is but a personal contract for occupancy between the parties; and if for more than six years and unrecorded, it is not binding upon third persons; and, as this particular contract or lease was not recorded, that it, the defendant, although having knowledge of it, was not obliged to pay any attention to it; and that, when the condemnation proceedings against the owner of the land were completed, it, the defendant, had a right to go upon the tract thus condemned, and which it claims since to have purchased, paying no attention to the occupancy or so-called rights of the complainant, and oust it therefrom.

Defendant, in support of this view, has filed a brief before

the court, in which its counsel appears to have gone to considerable trouble in an effort to sustain this view of the law, and, in addition, they have filed transcripts of all of the proceedings had in the local courts for the condemnation of this property and the final purchase of it from the owner, all of which proceedings confirm the statement that the complainant was not a party to it in any way.

We have examined with considerable care the references to the law, as contained in the brief of counsel for defendant, and we cannot admit that the law of Porto Rico, either § 355 of the Code of Civil Procedure, or arts. 2, 23, 27, or any other article of the mortgage law, or any other section of any Porto Rican law, or any of the references given to us from Escriche, Manrosa's commentaries on the Civil Code, or Galindo's commentaries on the mortgage law, justify this extraordinary claim of counsel for defendant, that the action of his client is due process of law as to this complainant, under the Porto Rican law, and we are constrained to say that if the laws themselves referred to could be held to justify the admitted acts of this defendant, the same would be wholly without right. We believe that it cannot be successfully contended that Congress left any such law in force in Porto Rico, or that the act of the local legislature in passing any law that would permit this, or any other defendant, to condemn property and rights of another without giving such other his day in court, would be other than *ultra vires* as to such legislature, and we use this term advisedly, as § 7 of the Foraker act (31 Stat. at L. 77, chap. 191), makes the people of Porto Rico "a body politic."

While Congress has studiously avoided extending in terms the Constitution of the United States to Porto Rico, and while the Supreme Court of the United States has ever and probably will continue to avoid passing upon that question until it comes

before it, we are of opinion that whether the Constitution, as a whole, follows the flag, or not, enough of it or its spirit follows the flag to prevent courts of the United States, having jurisdiction, wherever located, from permitting anybody's property to be taken without due process of law, or from obeying statutes that impair the obligations of contracts. The thought is not to be tolerated that any act of Congress intended to leave any Spanish law in force in Porto Rico, or intended the local legislature to pass or keep in force any law, that would, under our well-known system of jurisprudence, accomplish such result.

The idea here sought to be conveyed seems to have been in the mind of the Supreme Court of the United States when, in Downes v. Bidwell, 182 U. S. 268, 45 L. ed. 1099, 21 Sup. Ct. Rep. 770, it adopted the forceful language of Mr. Justice Bradley in Church of Jesus Christ of L. D. S. v. United States, 136 U. S. 1, 34 L. ed. 478, 10 Sup. Ct. Rep. 792, as follows: "Doubtless Congress, in legislating for the territories, would be subject to those fundamental limitations in favor of personal rights which are formulated in the Constitution and its amendments; but these limitations would exist rather by inference and the general spirit of the Constitution, from which Congress derives all its powers, than by any express and direct application of its provisions."

And the same idea is carried out in the express declarations of the President in military order No. 58, of April 23, 1900, and in the act of Congress of July 1, 1902, establishing a civil government in the Philippine Islands, as is stated in Kepner v. United States, 195 U. S. 100, 49 L. ed. 114, 24 Sup. Ct. Rep. 797.

Whatever the relation between complainant and its landlord is, as to the possession of this sugar plantation, and whether the contract or lease setting it out is recorded or not, it is good

as between them, and the defendant had full knowledge of its existence, and saw and knew that the complainant was in possession of this ground, cultivating, using, and occupying it. Whether this lease is recorded or not, it cannot give either the landlord or a mere outsider, who attempts to exercise the sovereign power of eminent domain, the right to ignore it. To admit that the sort of procedure here referred to is valid, would, in our opinion, be to admit that the legislature of Porto Rico can, as stated, impair the obligations of a contract.

All the references in the mortgage law of Porto Rico, which claim that unless the instrument is recorded, etc., it will not be binding on third parties, and defining third parties to mean any person not a party to the instrument, cannot, in our opinion, be held to mean persons who have actual knowledge of it, and certainly cannot be held to mean those third parties who attempt to clothe themselves with the sovereign power of government, with a right of eminent domain, and thus condemn property for their own use.

To say, on the facts in this case, that this defendant has the right to condemn this land and pay all the money to the landlord, without considering the rights of this complainant, is the assertion of a doctrine we cannot subscribe to. The court cannot concede that to be the law. In our opinion, the third party referred to in the Porto Rican mortgage law is an innocent purchaser for value, not parties condemning with knowledge of the rights of third parties in possession on the ground. What right has this defendant to force this complainant to bring a suit against his landlord for money had and received out of the condemnation money, and take his chances as to its collection? This complainant has a right to insist that it be made a party to the condemnation proceedings, and the money paid into court to secure it, before the defendant should be permitted to

oust it from its lawful possession. This procedure will tend to the peace of the community, while any other would tend to revolution.

An examination of the authorities convinces the court that this matter can perhaps be settled in this proceeding, and that the defendant, if it chooses, has a right to have the court send out appraisers to appraise the damage (under the instructions of the court) that would be caused to the complainant by the taking of this property, and the court will do that on application. Or the defendant may, as it chooses, bring a direct proceeding in the local courts under the statute, to condemn the rights of this complainant in the property described; but until it does one or the other of those things, and secures the complainant by the payment of the assessed damages into court, or the filing of a bond in that behalf in the sum of ten thousand dollars ($10,000), to be approved by the clerk of this court, a restraining order will issue against defendant, and it is so ordered.